UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE ADDAMS SENIOR CAUCUS, NORTH CAROLINA TENANTS UNION, MARYLAND LEGAL AID, and LISA A. SADLER,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and SCOTT TURNER, in His Official Capacity as Secretary of the United States Department of Housing and Urban Development,<br><br>*Defendants*. | Civil Action No.1:26-cv-00718 |

## DECLARATION OF SHAWNESE JONES

I, Shawnese Jones, hereby declare as follows:

1. I submit this declaration regarding the rescission of the 2024 Final Rule titled "30-Day Notification Requirement Prior to Termination of Lease for Nonpayment of Rent" ("2024 Final Rule") by the United States Department of Housing and Urban Development ("HUD").

2. I am a dues-paying member of the Jane Addams Senior Caucus ("JASC"). I have been a member since February 14, 2025. I am comfortable with JASC representing my interests in this case.

3. I am a tenant at Lakeside Tower Apartments, a Section 8 Project-Based Rental Assistance property in Waukegan, Illinois. I have lived at Lakeside Tower Apartments since 2022.

1

4.My rent is due on the fifth of every month. I do not currently know the amount of rent I owe per month because the management of Lakeside Tower has not completed my recertification after I raised numerous ledger issues with the assistance of the attorney provided by JASC. As a result, my landlord has not informed me what my current rent is.

5.I am a 45-year-old Black woman, and I live with my three children, ages 16, 11, and 9, as well as my five-year-old grandchild.

6.I work approximately 50 hours per month as a caregiver for seniors. I work for an agency called Care for Soul. I have worked for them for more than four years. I get paid biweekly and bring home a maximum of about $500 each paycheck. However, my paycheck amount changes depending on my hours.

7.Because I get paid biweekly and my paycheck amount fluctuates, there have been months during my tenancy where it was hard for me to pay my full rent when it was due. There have been times when I could not pay the full balance until receiving my second paycheck.

8.Even though I work as much as I can, I get paid so little that I cannot afford an apartment for me and my dependents on the private rental market.

## Lakeside Tower Apartments

9.Lakeside Tower Apartments has a Section 8 Project-Based Rental Assistance subsidy through the HUD's Property Disposition program.

10.In addition to being a member of JASC, I am a member of my building's tenant association, the Lakeside Tower Tenant Union. We meet regularly to discuss issues with the building. Because of this, I hear about problems other tenants are facing.

11.JASC frequently assists the Lakeside Tower Tenant Union as part of its mission to support HUD tenants in building power and improving the conditions of their tenancies. For

example, in July 2024 and February 2025, JASC assisted the Lakeside Tower Tenant Union with creating and circulating petitions asking management to fix a number of unfair practices. It was signed by me and other tenants.

12. JASC staff and its contract attorney meet and talk regularly with Lakeside Tower tenants, including myself. They are very knowledgeable about the HUD rules governing our tenancies and work to educate us about how to enforce our rights. They are also experienced with navigating recurring, complex ledger error issues that plague Lakeside Tower residents. They spend a lot of time requesting and reviewing our ledgers when the property says we owe a balance, to help us advocate for ourselves and our neighbors.

13. A lot of tenants are being threatened with eviction over inaccurate balances on their ledgers.

14. I know from personal experience that it can take months to address these types of ledger problems with management. Instead of trying to sit down with tenants to identify errors, their general attitude is "tell it to a judge."

15. I understand from my attorney that the property is required to provide 30 days' notice and the opportunity to cure a nonpayment violation before eviction. Each time I get an eviction notice, I obtain a new ledger, and my attorney and I have to untangle all of the different charges and credits to identify errors. The ledgers are so complicated that this process can take a couple of weeks to a month. This is before we even attempt to meet with management to address the issues. The 30 days' notice gives us more time to accurately and thoroughly address ledger issues with management.

16. I am worried that if the 2024 Final Rule is revoked, Lakeside Tower Apartments will go back to providing only the five days' notice required under Illinois law. I worry because

3

management continues to provide five days' notice instead of 30 days' notice on occasion. On October 15, 2025, I received notice from management saying I was delinquent and had five days left to pay my balance. Any eviction based on this notice would probably have been thrown out because it did not comply with the 2024 Final Rule, but it goes to show that the property is eager to return to shorter notice requirements.

17. In my experience, five days is not enough time to fix the types of ledger and recertification problems that I have experienced.

Risk of Eviction with Insufficient Notice

18. I have faced eviction for nonpayment on multiple occasions, all related to errors with my income and rent calculation.

19. On September 18, 2023, I received a 30-day notice to vacate, alleging I owed $430. I was confused and did not understand what the balance was for since I had paid all of my rent. I was willing to pay any amount legitimately owed, so I asked for a copy of my ledger to understand the source of the balance.

20. I also contacted JASC for assistance with contesting my ledger balance because I did not want to be evicted.

21. I did not receive a copy of my ledger until May 28, 2024, more than eight months after I made my request. On that day, I received a notice dated May 23, 2024, saying I owed $1,654 in past due rent. Management then informed me the notice was inaccurate and should be disregarded.

22. Every year, I submit paperwork for an annual recertification of my income. Management is supposed to process the recertification, issue me a new lease, and tell me my new rent amount so I know what to pay.

23. On June 21, 2024, during my annual recertification of income, the property manager informed me that my rent portion would go from about $120 per month to almost $700 per month effective one week later, on July 1, 2024. I did not understand why because my income had not changed.

24. I contacted JASC again and they connected me with their contract attorney, Peter Luck. Peter and Noah Moskowitz from JASC reviewed my recertification paperwork. They explained that my rent portion is supposed to be 30% of my gross income, minus an allowance for utilities. My gross income is usually just above $1,000 per month, so $700 was closer to 70% of my income. They calculated my rent portion as $144.60 based on the income shown on my paystubs and applicable deductions, including a deduction for certain childcare expenses. Peter and Noah also reviewed my ledger and determined that the balance on the ledger appeared to be inaccurate.

25. On July 16, 2024, I received a notice that I owed $2,524 in past due rent but was informed again that the amount was inaccurate and due to a system error.

26. On July 25, 2024, Peter sent a formal letter to property management disputing the May 23 and July 16 eviction notices and the unjustified rent increase. He discussed the issues with the property's counsel on July 30, 2024.

27. In other words, it took myself, Peter, and JASC staff about a month to sort through all of my ledger entries, review my income recertification paperwork to identify errors, and then to successfully schedule a call with the property's counsel. There is no way we could have reviewed this volume of ledger entries and associated paperwork if the property had filed an eviction after the five-day notice period under state law. If they had, I probably would have been evicted.

28. We thought that the issues with my ledger would be corrected after the meeting. However, they were not fixed.

29. On September 10, 2024, I received a 30-day notice claiming I owed $3,973. Again, believing this amount to be inaccurate, my lawyer and I continued to communicate to management that my ledger needed to be corrected. I provided my paystubs and bank statements to verify my income.

30. I went to the office multiple times to resolve these issues, but often, the office was closed during business hours or I was told to return another time.

31. On September 11, 2025, management gave me a 30-day eviction notice for an alleged $9,176 in back rent. Shortly thereafter, I was told by management that the balance was a system error and should be disregarded.

32. My JASC attorney analyzed the ledger upon which the September 11 notice was based and determined there were roughly $7,000 in inaccurate or erroneous charges on the ledger. The property had repeatedly increased my rent without notice or reason. The property had also failed to properly apply a required deduction for childcare expenses. On October 1, 2025, my attorney contacted management about the errors.

33. In other words, it took him roughly three weeks to sort through and catalogue all of the issues with my updated ledger. There was no way we could have reviewed and catalogued all of these issues, and addressed them with management, in the five-day notice period under state law. Had I only had five days, I probably would have been evicted.

34. Despite my attorney's communication, on October 15, 2025, I received another notice of rent due that contained inaccuracies. The notice demanded payment in five days even though 30 days' notice was required. Thankfully, the property did not file an eviction based on

6

this notice (and if they had, I believe it would have been dismissed for not complying with the 30-day notice requirement).

35. On November 6, 2025, I received another 30-day notice to pay or vacate stating that I owed $10,218, which I believed to be inaccurate.

36. My attorney and I continued to try to communicate with management about the ledger errors. Three months after my attorney sent his latest ledger analysis, management finally responded that all notices—with the exception of the September 11 notice—would be retracted.

37. To date, management still has not fixed my ledger despite our repeated attempts to work with management to address the errors.

38. Because of the ledger issues we have raised, my June 2024 recertification was never properly processed. I do not even know how much my monthly rent is. It is difficult for me to pay rent when I do not know what my rent is. I do not think I should be evicted for not paying rent when they have not told me how much to pay.

39. Management is still claiming I owe a balance, and I am afraid they will soon issue me another notice to vacate with another ledger riddled with errors. Historically, they have issued new 30-day eviction notices nearly every month.

40. I am worried because JASC staff have advised me that if I receive another eviction notice once the 2024 Final Rule is revoked, state law will apply and I will only have five days to address and resolve any issues with my ledger and pay off any balance. This is not going to be enough time for me and my attorney to obtain a copy of my ledger, sort through all the charges, identify errors, and then try to address those errors with management.

<u>Irreparable Harm If Evicted</u>

41.     If I am evicted and lose my housing subsidy, I will have nowhere to go. I make so little money working as a caregiver that there is no way I could afford a home on the private market for myself, my three kids, and my grandchild.

42.     I cannot move in with my mother because she does not have enough room for the five of us. I am a single parent, and I do not have any other family nearby that could take us all in. We would have to split up our family or become homeless together. Being separated from my kids or becoming homeless would cause all of us severe emotional distress.

43.     My 16-year-old daughter has asthma, for which she has had to be hospitalized. I am afraid that if we are evicted and become homeless or unstably housed, it will be more difficult for me to keep up with my daughter's medical appointments and asthma-related care. This could have negative impacts on her health.

44.     My school-aged children will also suffer academically if we have to move and they have to switch schools, or if we become homeless. It will be hard for them to keep up with their schoolwork if we are separated or have to move in with a family member or friend who really does not have space for us. This would be disruptive to their schooling and could have harmful effects on their future opportunities.

45.     Eviction would also make it harder for me to keep my job because I take public transit to my job. If I had to move, or if I could not stay somewhere reliably, there would be no guarantee that I would be near a public transit option that would allow me to reliably get to work on time. So, there would be no guarantee I could keep my job.

## Procedural Injury

46. I believe that before the government revokes the 2024 Final Rule, it should consider the experiences of tenants like myself who have benefitted from the rule and will be harmed by its revocation.

47. I have important information to share about how frequently tenants in Section 8 properties have inaccurate balances. Without sufficient time, they will be evicted unnecessarily for rent balances they do not actually owe.

48. I can also share the personal experience of how housing insecurity and the risk of eviction threaten harm to my family.

49. I also want to share with HUD that tenants like me who get paid biweekly and work slightly different hours each pay period sometimes need the full month to pay their full portion since their income is split between two paychecks.

50. I could not have shared this information in response to the 2023 Notice of Proposed Rulemaking because most of my ledger and recertification issues began in the summer of 2024, after the comment period had closed.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed in <u>Waukegan Illinois</u> on February <u>25</u>, 2026.

<u>Shawnese Jones</u>
Shawnese Jones