UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE ADDAMS SENIOR CAUCUS, NORTH CAROLINA TENANTS UNION, MARYLAND LEGAL AID, and LISA A. SADLER,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and SCOTT TURNER, in His Official Capacity as Secretary of the United States Department of Housing and Urban Development,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00718 |

### DECLARATION OF VICTORIA SCHULTZ

I, Victoria Schultz, hereby declare as follows:

1. I submit this declaration regarding the rescission of the 2024 Final Rule titled "30-Day Notification Requirement Prior to Termination of Lease for Nonpayment of Rent" ("2024 Final Rule") by the United States Department of Housing and Urban Development ("HUD").

2. I am the Executive Director at the Legal Aid Bureau, Inc., d/b/a/ Maryland Legal Aid.

3. Established in 1911, Maryland Legal Aid is a statewide nonprofit 501(c)(3) law firm that advocates with and for Marylanders experiencing poverty to achieve equity and social justice through free civil legal services, community collaboration, and systemic change.

4. From its 11 offices around the state and through its many community-based clinics, Maryland Legal Aid helps its clients preserve and access safe and affordable housing;

1

maintain custody of their children and be safe from domestic violence; and increase their economic security by defending against consumer debt including foreclosures and tax sales, removing barriers to employment, and accessing critical income supports such as Medicaid, SNAP, unemployment, and other vital public benefits. Maryland Legal Aid seeks to change systems that perpetuate poverty and deny our clients' access to justice. On average, housing cases make up about 40% of the over 25,000 cases we handle annually.

5. In service of our mission, we represent low-income tenants in a variety of housing matters, the bulk of which focus on eviction prevention. As a provider of civil legal services to low-income individuals and families, many of our eviction prevention cases involve tenants who reside in HUD-subsidized housing. These cases are among our highest priorities as the consequences of losing one's subsidized tenancy often means the family will have no affordable options and are at high risk for homelessness.

6. In our work, the goal is to deliver our clients' preferred outcome, typically: staying housed; preserving their right to retain their affordable, subsidized units; keeping evictions off their records; and resolving the disputes they are having with their landlords so that they can remain housed and experience long-term stability.

7. In Maryland, low-income tenants have had a statutory right to access counsel in eviction proceedings since 2021. In response, Maryland Legal Aid and other legal service providers have established a physical presence at courthouses, where we conduct intake and offer same-day representation to ensure that tenants may access counsel on their day of trial. Overall, tenants who first contact us at courthouses account for around 44% of eviction case intakes. The remaining 56% of clients reach out to us in advance of trial by contacting us online, by telephone, or by coming into one of our offices. Importantly, tenants residing in HUD-subsidized

housing are much more likely to contact us earlier: 85% reach us through online, telephone, or walk-in intake in advance of their hearing, and only 15% first contact us at court.

8. Many tenants who contact us in advance of their hearing do so after having received notice from the landlord of intent to file an eviction case. Under Maryland law, a landlord must provide a tenant the notice of intent to file a Failure to Pay Rent ("FTPR") complaint at least 10 days prior to filing. While typically insufficient, especially for HUD-subsidized tenants, this notice period affords an important window of time for our advocates to attempt to gather the information necessary to understand a tenant's situation and explore available defenses or attempt to resolve the matter before the landlord initiates the eviction process.

## The 2024 Final Rule

9. The 2024 Final Rule expanded and tripled the time Maryland law provides before a court hearing to assist HUD-subsidized tenants covered by the regulation and prepare any available defenses. Over the past year, the 2024 Final Rule has been instrumental in helping us achieve our mission of keeping tenants safely and affordably housed.

10. In 2025, Maryland Legal Aid prevented or delayed the eviction of the majority of tenants in HUD-subsidized housing who came to us for assistance with eviction cases for failure to pay rent. We achieved this result in 67.2% of those cases, up significantly from 44.7% of those cases in 2024. While it is difficult to definitively attribute this increase solely to the 2024 Final Rule, our advocates generally report that the notice has been an integral tool in our eviction prevention work for these clients. HUD-subsidized tenants are governed by federal regulations and have additional rights and defenses than tenants in private landlord-owned units. Consequently, these cases are more complex and the stakes much higher, since alternative market

rate housing is often out of reach for these tenants. Our advocates report that both the advanced time period and the substantive content provided in the notice strengthen our representation in FTPR cases for subsidized tenants.

11. Understanding the importance of the 2024 Final Rule requires some understanding of our work as a civil legal aid organization, and specifically with respect to FTPR cases.

12. When people come to us seeking assistance, we must first assess whether they are eligible for our services. Through that process, we also document the particular legal issue(s) they are facing. If eligible, the potential client's case is referred to the appropriate office, where it is assigned to an attorney or other advocate. Our case handlers then investigate the cases they are assigned to clarify the facts and determine the available resolutions of the legal issues.

13. A critical component of assistance in an FTPR case is a thorough review of the landlord's accounting, or ledger, to ensure the alleged amount due is accurate. This analysis is especially important in cases where a subsidy is involved—there are a number of program guidelines and federal regulations that dictate how the tenant's portion of the rent and responsibility for other fees must be determined. Tenants and landlords are required to engage in the income recertification process annually: the tenant provides the relevant information—including household size, household income, and total assets—and the landlord then provides notice of the tenant's portion of the rent. The remainder of the rent is covered by the federal subsidy. Tenants also have the right to seek interim income recertifications when they experience a change in income or other circumstances that impact their ability to pay their portion of the rent. There are multiple opportunities for error in these calculations. Ensuring the math is correct,

4

and that changes in the tenant's obligations complied with federal regulations, is vital to understanding what a tenant actually owes.

14. Consequently, our standard practice in cases involving public housing or other federally subsidized units is to request to review the ledger and the tenant's entire file. It can take time both to access the file and to review it. For this reason, the average number of hours our advocates spend handling an FTPR case for a subsidized tenant is more than 1.5 times greater than the time it takes to handle an FTPR case with no subsidy.

15. In our experience, it can be difficult and time-consuming to access all relevant information in a tenant file at a subsidized property. Caseworkers at Public Housing Authorities ("PHAs") often have high caseloads and can be difficult to contact. Because PBRA properties often experience high staff turnover, identifying the proper person and contact information takes time, and managers are not always able to respond quickly to our file requests. In several Maryland jurisdictions, the standard time for a file review is counted in weeks, not days.

16. For example, at one time, the Housing Authority of Baltimore City ("HABC") offered "walk-in Wednesdays," where they allowed tenants to come in person to see their rental specialists and to request copies of any documents needed from their files. Our advocates often relied upon that weekly opportunity to obtain the information needed for effective, informed representation. However, HABC has ended that practice. Our advocates report that it now takes weeks to a month to obtain ledgers and income certification documents, critical to investigating a case and mounting available defenses.

17. When dealing with the Housing Authority of Prince George's County ("HAPGC"), our advocates are not permitted to access physical tenant files and instead must make requests for specific documents from the electronic file. HAPGC typically takes weeks to

fulfill these requests and at times does not even respond. Once litigation begins, our advocates then rely on document subpoenas to obtain the information they need from their clients' files. Even when working with more responsive PHAs, including in Howard and Anne Arundel Counties, we typically receive file review appointments around two weeks after a request is made.

18. During the review of tenant files, we often find errors that reduce or resolve the amounts claimed by the landlord, while in other cases we receive clarity about the amount owed and help the tenant bring their account current.

19. Every step towards a resolution of these non-payment cases requires time and access to accurate information. When funds are needed to resolve a case, a tenant must apply for eviction prevention funds. That, too, takes time and our clients must have sufficient time to undergo the granting agency's intake or screening processes, provide necessary records and forms, and submit these documents, often multiple times. Similarly, awaiting responses to subpoenas and negotiation of payment plans with the landlord also requires repeating steps and prolonged time. The only way to overcome these bureaucratic barriers and provide the legal assistance needed is for our staff to expend significantly more time handling the case.

20. The 2024 Final Rule mandates that more time be given before the eviction process begins. This provides more time for the tenant to act and to prevent their eviction. The Rule also requires the landlord, through the notice, to provide the tenant with critically needed, substantive information: an itemization of amounts owed, information about how to recertify their income or to request a hardship exemption, and notification about their right to request a hearing before the filing of an eviction case. Our advocates report that each of these facets of the Rule are critical components to our work on behalf of our clients. By acting promptly in the

pre-filing window, our advocates have sufficient time to work with subsidized housing landlords to obtain access to the important information in the tenant's file. We can identify ledger errors and seek to correct them, negotiate payment plans, seek eviction prevention funds, and ideally prevent evictions. The Rule has also enabled us to efficiently identify related issues, such as recertification errors or the need for a reasonable accommodation. When we can tackle these complex issues early, we more promptly and permanently address the root cause of the nonpayment issue and may even avoid the need to go to court.

21. Like many jurisdictions, Maryland's summary eviction process moves swiftly. Once a failure to pay rent complaint is filed, most clients have only a few days' notice of their trial dates. There is no discovery process. The proceedings focus almost entirely on whether the amount claimed on the face of the complaint is owed. To challenge the rent allegation, the tenant must supply evidence which they may not have access to, such as the information in their tenant file. In this truncated procedure, our ability to gain a full understanding of a client's situation before trial is pivotal.

22. When advocates do not have time to fully review a tenant file prior to the hearing, we argue for postponements. At present, if a PHA or PBRA landlord has not complied with the 2024 Final Rule, our judiciary will typically dismiss the case. When that occurs, tenants, with our advocates' assistance, usually succeed in obtaining their ledgers and rent calculation documents from their files.

23. The 2024 Final Rule has had a demonstrably positive impact on our ability to serve our clients residing at PBRA properties and provide accurate information to the court on our clients' behalf. At one such property in Baltimore City, we received a call from a client after she received a 30-day notice, which claimed amounts owed from September 2025 to January

7

2026. However, part of the landlord's claim overlapped with their prior claims against our client in a case one year earlier. In the earlier case, we had been able to determine that the amount showed was not in the hundreds, as claimed by the landlord, but only $7.10. The 30-day notice provided a critical window for us to again navigate the potentially erroneous recordkeeping of this client's landlord and bring that to the court's attention.

24.     At an Anne Arundel County PBRA property, Maryland Legal Aid was able to use the 30-day window to identify errors on a client's ledger and demonstrate that our client owed only $149.20, an amount for which the landlord was willing to settle through a repayment agreement. At another PBRA building in Anne Arundel County, our attorney used the notice time to negotiate with the landlord to accept partial payments and to request a reasonable accommodation that would align the client's rent due date with the date she receives her disability benefits. At a Montgomery County PBRA property, our attorney obtained a dismissal of a case filed without the required 30-day notice and was then able to access the tenant's file and clear up a discrepancy about the client's recertification paperwork.

25.     The notice requirement has also significantly improved our ability to serve clients in public housing. For example, we recently secured the dismissal of around 70 FTPR cases filed by the HAPGC because the agency did not comply with the 2024 Final Rule. In following up with the impacted tenants, we discovered that HAPGC reissued notices that complied with the Rule and provided the required accounting of amounts owed. With access to this information, we then found errors in their accounting, including errors stemming from irregular recertification procedures which dated back to 2020, in violation of federal regulations. In our experience with HAPGC cases, the 30-day notice will be crucial as we sort through erroneous ledger entries, seek

8

correction of ledgers, and pursue resolution through dismissals, payments, or agreements to pay any remaining balances over time.

26. If the 2024 Final Rule is rescinded, it will be more difficult for us to achieve our mission of preserving housing subsidies and preventing evictions for low-income Marylanders.

27. When there is not a clear requirement for the landlord to provide an accounting of the amount owed, we are less likely to receive it in advance. Without the required 30-day prefiling notice window, our advocates will be forced to act on a more compressed timeline while navigating additional challenges in accessing tenant ledgers and files, which has cascading effects. Barriers to early access to this information impedes our ability to resolve a matter prior to the eviction filing—which necessarily means that the eviction filing will become part of the tenant's rental history, narrowing their future housing options even further. Loss of the 30-day notice also complicates our ability to understand the issues in time to resolve the case prior to trial and to prepare relevant defenses.

28. Without the clear substantive requirements of the 2024 Final Rule, courts in some Maryland jurisdictions are not always eager to grant postponements. When we present the Rule to judges, they view a postponement as necessary to effectuate a federal mandate for required time and the production of the information specified in the Notice. In the absence of the Rule, judges will be more likely to view postponements as discretionary rather than mandatory.

29. Further, in the absence of the 2024 Final Rule, our advocates would have to rely on Maryland's law providing 10 days' pre-filing notice in failure to pay rent cases. The 10-day notice period provides insufficient time to communicate with the subsidized landlord, to obtain the ledger and other tenant file documents, and to reconcile errors in those documents. We know this from deep experience in our eviction prevention work, a high-volume, high-need practice.

30. Without the structure and defined time period the 2024 Final Rule provides, staff are forced to spend more, not less time on an individual case. That directly impacts our staff's ability to handle additional cases. Obtaining a continuance for a file review often means a case will be rescheduled for the next week. That advocate may then spend the intervening time trying to negotiate a more prompt response from the landlord. Either way, the advocate will arrive to court with the continued case still on their docket, which limits their capacity to take on additional cases set for that week. If this continues for several weeks, potentially for multiple clients, over time the attorneys we are sending to court have decreased capacity to assist other renters who show up and need our services. This reduction in available advocate time is not only antithetical to our mission, but to the spirit of Maryland's Access to Counsel in Evictions law. Moreover, the continued reliance on numerous postponements frustrates judicial economy and administrability.

31. Revocation of the Rule takes away an effective intervention that Maryland Legal Aid has leveraged to resolve non-payment disputes more effectively and efficiently for tenants in HUD-subsidized housing than is possible under our state's 10-day notice law. Without the Rule, we anticipate an increase in the number of subsidized housing eviction cases filed and, ultimately, increased evictions for these tenants. This uptick will strain our resources and our ability to manage the volume of FTPR cases.

<u>Procedural Injury</u>

32. Maryland Legal Aid submitted a comment on January 30, 2024, in response to the 2023 Notice of Proposed Rulemaking on the 30-Day Notice Rule.

33. In that comment, we discussed the specific benefits we anticipated the rule would have, including providing time to retain counsel, preventing the need for litigation, preparing accurate defenses to litigation, and obtaining eviction prevention funds.

34. A copy of that comment is attached as Exhibit A.

35. Maryland Legal Aid now has new information to share that was not available when we submitted our comment. As discussed above, the additional notice and information requirements under the 2024 Final Rule have had a measurable impact on our ability to efficiently and thoroughly serve our clients living in subsidized properties and public housing. Specifically, at the time of our comment, we had not anticipated the significant impact the Rule would have on our ability to fully review the tenant files and to address ancillary issues that were contributing to the non-payment issue, such as recertification problems and reasonable accommodation needs. We also did not foresee that the substantive content requirements in the Rule would assist us with seeking postponements from the judiciary in these cases, as the Rule provides a clear statement of the importance of that information to addressing non-payment issues. Moreover, we now have actual data and client stories that confirm that our clients have realized the benefits we anticipated seeing from the Rule.

36. Before HUD revokes the 2024 Final Rule, it should provide a process, as the law requires, that considers the experiences of our organization and the ways in which our ability to achieve our mission of preventing eviction and preserving subsidies will be frustrated by revocation of the Rule.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed in  Baltimore , Maryland  on February  27 , 2026.

*Victoria Schultz*

Victoria Schultz, Executive Director
Maryland Legal Aid